## SMITH v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   March 11, 1904.)

1. CARRIERS—STREET RAILWAY PASSENGER—COLLISION WITH VEHICLE—NEGLI-
GENCE OF MOTORMAN.
   Evidence in an action by a street car passenger for injuries received in
   a collision between the car and a vehicle considered, and *held* to sustain a
   verdict for plaintiff, founded on the negligence of the motorman.

2. SAME—EXCESSIVE VERDICT.
   A street car passenger was severely injured on July 26, 1899, in a col-
   lision between the car and a vehicle, by being struck by a shaft of the
   vehicle in the breast.   He was taken to a hospital, where he remained un-
   til September, when he was sent to Maine with a trained nurse.   In No-
   vember he returned to the hospital, remaining there until the 29th, and
   was not able to return to his regular business until May, 1902.   It ap-
   peared that he would never fully recover from his injuries, though he was
   not permanently disabled.   *Held*, that a verdict of $25,000 was excessive,
   and should be reduced to $20,000.

Appeal from Trial Term, New York County.

Action by Philip L. Smith against the Metropolitan Street Railway
Company.   From a judgment for plaintiff, and from an order denying
a new trial, defendant appeals.   Modified.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.
William N. Cohen, for respondent.

INGRAHAM, J.   On the 26th day of July, 1899, the plaintiff board-
ed one of the defendant's open cars at the corner of Rector street and
Trinity Place.   He occupied a seat on the fourth bench from the front,
on the west side of the car.   The car proceeded up West Broadway,
and between Grand and Broome streets the plaintiff was severely in-
jured by the shaft of a truck striking him in the breast.   He testified
that when the car was near Broome street he noticed a one-horse
truck coming down upon the east track, upon which the car he occupied
was proceeding; that the driver of the truck did not turn off the track,
and the motorman did not stop the car; that as the car approached the
truck the horse attached to the truck turned to get off the track; that
after the horse left the track there was a crash, and immediately after-
wards he found himself sitting on the seat upon the east side of the
car, one or two benches behind the one he had been occupying, and
discovered that he had been severely injured in his right breast; that
he was taken to a hospital, where he remained until some time in
September, when he was sent to Maine with a trained nurse; that in
November he returned to the hospital, remaining there until November
29th, and was not able to return to his regular business until May,
1902.   Upon cross-examination he testified that the collision occurred
when the car was about midway between Grand and Broome streets;
that the driver of the truck did not turn off the north-bound track
until the car and the truck were 20 or 25 feet apart; that then the
horse turned sharply to the west; that the horse was clear of the track

before the collision, and at the time of the collision the horse was facing in a southwesterly direction. The plaintiff's testimony was corroborated, and there was evidence that after the collision the car went for about 75 feet, and that the truck was on the west of the railroad track near the gutter.

Upon the part of the defendant there was testimony tending to show that this truck with which the car collided was going down town upon the west track, and not upon the east track, upon which the car on which the plaintiff was a passenger was proceeding; that, after the front of the car had passed the truck, one of the cases upon the truck fell and struck the roof of the car, and then fell down between the car and the truck, and immediately afterwards something struck the plaintiff. The motorman testified that the truck was upon the west track; that he passed the truck in safety, and that there was room for his car to pass the truck without a collision; that as he approached the truck he slowed down until he was within 10 or 15 feet of the truck, then noticed that there was room enough for his car to pass, and he continued on; that when the front of his car reached the middle of the truck between the front and back wheels he heard a commotion behind him, when he stopped his car; that when he stopped the front end of the car was parallel with the rear end of the truck. The mechanic who repaired the car testified that there was no injury or mark on the front of the car; that one of the stanchions that supported the roof was broken, and two were damaged, and four pillar bars were bent; that the back of one seat was also broken.

There would seem to be no doubt but that the plaintiff was injured by the shaft of this truck striking him while seated upon the west or left-hand side of the car. The man who repaired the car testified that there was no damage to the roof of the car; but it is apparent that this accident could not have been caused by the fall of a case from the truck, unless the car had come in collision with the truck. If there had been such a collision, it is quite probable that it would have caused a case to fall. Whether or not the truck was upon the track upon which the car was proceeding, or partly upon the westerly track, does not seem to be material. If the situation was such that the car could not pass the truck without a collision, it was the duty of the motorman to stop the car in time to avoid the truck; and for the negligent performance of that duty, from which resulted an injury to a passenger, the defendant was responsible. That there was such a collision, and that, as the result thereof, the shaft of the truck was thrown over upon the car, is the necessary conclusion to be drawn from the evidence. It was, then, a question for the jury to say whether that collision was caused by the negligence of the motorman in attempting to pass the truck. That the plaintiff was severely injured as a result of the collision between the car and the truck in the street, and that that collision could have been avoided by the motorman stopping the car when he saw the truck approaching, is evident. Whether that collision was the result of the negligence of the motorman in attempting to pass this truck, as he did, without stopping, was a question for the jury; and with its verdict that there was negligence I do not think we would be justified in interfering.

The only other question presented relates to the damages. The jury fixed the amount at $25,000. While it is true that the injuries to the plaintiff were very severe, and that he will never fully recover, the plaintiff is not permanently disabled. At the time of the trial he was able to attend to his business. This condition having been caused, as found by the jury, by the negligence of the defendant's employés, the damages should be sufficient to compensate him so far as possible for the injury; and the amount that would be sufficient to compensate him was for the jury to determine, subject to a review by this court if it should appear that the amount awarded was beyond what is a fair compensation. We think, however, that $25,000 was excessive, as such a sum is only awarded where by the loss of a limb, or an accident which has caused a total disability, a person is permanently disabled. We have come to the conclusion, therefore, that this verdict should not, under the circumstances, exceed the sum of $20,000, and the judgment and order must for that reason be reversed, and a new trial ordered, with costs to appellant to abide the event, unless the plaintiff stipulates to reduce the judgment as entered, including costs and allowance, to the sum of $20,549.35; in which event the judgment as so modified and the order appealed from are affirmed, without costs of this appeal. All concur.